# EXHIBIT 1-a

# CIVIL COVER SHEET

Filing # 63336981 E-Filed 10/25/2017 06:36:07 PM

RECEIVED

**FORM 1.997. CIVIL COVER SHEET**

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner for the use of the Clerk of Court for the purpose of reporting judicial workload data pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

CLERK US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS FLORIDA

**I.    CASE STYLE**

IN THE CIRCUIT COURT OF THE <u>TWENTIETH</u>   JUDICIAL CIRCUIT,
IN AND FOR <u>LEE</u>   COUNTY, FLORIDA

Case No.:_____
Judge: _____

<u>John Doe, Jane Doe, Jane Doe II, Jane Doe III, Jane Doe IV, Jane Doe V</u>
Plaintiff

vs.

<u>Wondaland Productions, LLC, University of Louisville, ExoMedicine Institute, Nathaniel Irvin III, Nathaniel Irvin II</u>
Defendant

**II.    TYPE OF CASE**

- ❑ Condominium
- ❑ Contracts and indebtedness
- ❑ Eminent domain
- ❑ Auto negligence
- ❑ Negligence – other
  - ❑ Business governance
  - ❑ Business torts
  - ❑ Environmental/Toxic tort
  - ❑ Third party indemnification
  - ❑ Construction defect
  - ❑ Mass tort
  - ❑ Negligent security
  - ❑ Nursing home negligence
  - ❑ Premises liability – commercial
  - ❑ Premises liability – residential
- ❑ Products liability
- ❑ Real Property/Mortgage foreclosure
  - ❑ Commercial foreclosure $0 - $50,000
  - ❑ Commercial foreclosure $50,001 - $249,999
  - ❑ Commercial foreclosure $250,000 or more
  - ❑ Homestead residential foreclosure $0 – 50,000
  - ❑ Homestead residential foreclosure $50,001 - $249,999
  - ❑ Homestead residential foreclosure $250,000 or more
  - ❑ Non-homestead residential foreclosure $0 - $50,000

- ❑ Non-homestead residential foreclosure $50,001 - $249,999
- ❑ Non-homestead residential foreclosure $250,00 or more
- ❑ Other real property actions $0 - $50,000
- ❑ Other real property actions $50,001 - $249,999
- ❑ Other real property actions $250,000 or more

- ❑ Professional malpractice
  - ❑ Malpractice – business
  - ❑ Malpractice – medical
  - ❑ Malpractice – other professional
- ☒ Other
  - ❑ Antitrust/Trade Regulation
  - ☒ Business Transaction
  - ❑ Circuit Civil - Not Applicable
  - ❑ Constitutional challenge-statute or ordinance
  - ❑ Constitutional challenge-proposed amendment
  - ❑ Corporate Trusts
  - ❑ Discrimination-employment or other
  - ❑ Insurance claims
  - ❑ Intellectual property
  - ❑ Libel/Slander
  - ❑ Shareholder derivative action
  - ❑ Securities litigation
  - ❑ Trade secrets
  - ❑ Trust litigation

## COMPLEX BUSINESS COURT

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☒ No ☐

III.   **REMEDIES SOUGHT** (check all that apply):
   ☒  Monetary;
   ☒  Non-monetary declaratory or injunctive relief;
   ☐  Punitive

IV.   **NUMBER OF CAUSES OF ACTION:** ( )
   (Specify)

   2

V.   **IS THIS CASE A CLASS ACTION LAWSUIT?**
   ☐  Yes
   ☒  No

VI.   **HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
   ☒  No
   ☐  Yes – If "yes" list all related cases by name, case number and court:

   None

VII.   **IS JURY TRIAL DEMANDED IN COMPLAINT?**
   ☒  Yes
   ☐  No

---

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature s/ Anthony Demetrous Jewett  FL Bar No.:
   Attorney or party          (Bar number, if attorney)

  Anthony Demetrous Jewett  10/30/2017
   (Type or print name)         Date

# EXHIBIT 1-b

# APPLICATION FOR DETERMINATION OF CIVIL INDIGENT STATUS

Filing # 63336981 E-Filed 10/29/2017 08:41:57 PM

IN THE CIRCUIT/COUNTY COURT OF THE _____ JUDICIAL CIRCUIT
IN AND FOR _____ COUNTY, FLORIDA

Anthony D. Jewett et al

CASE NO _____
_____
Plaintiff/Petitioner or In the Interest of
vs. Wondaland Productions, LLC
_____
Defendant/Respondent

## APPLICATION FOR DETERMINATION OF CIVIL INDIGENT STATUS

**Notice to Applicant:** If you qualify for indigence and are unable to pay the costs listed in FS 57.081, you must enroll in the clerk's payment plan and pay a one-time administrative fee of $25.00.  This fee shall not be charged for Dependency or Chapter 39 Termination of Parental Rights actions.

1. I have __1__ dependents. *(Include only those persons you list on your U.S. income tax return.)*
   Are you Married?...Yes...xNo  Does your Spouse Work?...Yes...No    Annual Spouse Income? $ _____

2. I have a net income of $ __$2200.00__ paid ( ) weekly ( ) every two weeks ( x semi-monthly ( ) monthly ( ) yearly ( ) other _____
*(Net income is your total income including salary, wages, bonuses, commissions, allowances, overtime, tips and similar payments, minus deductions required by law and other court-ordered payments such as child support.)*

3. I have other income paid ( ) weekly ( ) every two weeks ( ) semi-monthly ( ) monthly ( ) yearly ( ) other _____.
*(Circle "Yes" and fill in the amount if you have this kind of income, otherwise circle "No")*

| | | | | |
|---|---|---|---|---|
| Second Job | Yes $ _____ No | Veterans' benefits | Yes $_____ No |
| Social Security benefits | | Workers compensation | Yes $_____ No |
| For you | Yes $ _____ No | Income from absent family members | Yes $_____ No |
| For child(ren) | Yes $ _____ No | Stocks/bonds | Yes $_____ No |
| Unemployment compensation | Yes $ _____ No | Rental income | Yes $_____ No |
| Union payments | Yes $ _____ No | Dividends or interest | Yes $_____ No |
| Retirement/pensions | Yes $ _____ No | Other kinds of income not on the list | Yes $_____ No |
| Trusts | Yes $ _____ No | Gifts | Yes $_____ No |

I understand that I will be required to make payments for costs to the clerk in accordance with §57.082(5), Florida Statutes, as provided by law, although I may agree to pay more if I choose to do so.

4. I have other assets: *(Circle "Yes" and fill in the value of the property, otherwise circle "No")*

| | | | |
|---|---|---|---|
| Cash | Yes $ _____ No | Savings account | Yes $_____ No |
| Bank account(s) | Yes $ _____ No | Stocks/bonds | Yes $_____ No |
| Certificates of deposit or | | Homestead Real Property* | Yes $_____ No |
| money market accounts | Yes $ _____ No | Motor Vehicle* | Yes $_____ No |
| Boats* | Yes $ _____ No | Non-homestead real property/real estate* | Yes $_____ No |
| *show loans on these assets in paragraph 5 | | Other assets* | Yes $_____ No |

Check one: I ( ) DO ( ) DO NOT expect to receive more assets in the near future. The asset is _____

5. I have total liabilities and debts of $ __$110,000__ as follows: Motor Vehicle $_____, Home $_____, Boat $_____, Non-homestead Real Property $_____, Child Support paid direct $_____, Credit Cards $_____, Medical Bills $__$10,000__, Cost of medicines (monthly) $_____, Other $__$100,000__

6. I have a private lawyer in this case: *(Circle "Yes" or "No")* . . . . . . . Yes  No  x

A person who knowingly provides false information to the clerk or the court in seeking a determination of indigent status under s. 57.082, F.S. commits a misdemeanor of the first degree, punishable as provided in s. 775.082, F.S. or s. 775.083, F.S. I attest that the information I have provided on this application is true and accurate to the best of my knowledge.

Signed this __25th__ day of __October__, 20 __17__.

*Anthony Jewett*
Signature of Applicant for Indigent Status

Date of Birth    Driver's License or ID Number

Print Full Legal Name
Phone Number __239.410.4735__

P.O. Box 1264, Fort Myers, Florida 33902
Address, P O Address, Street, City, State, Zip Code

This form was completed with the assistance of. _____
Clerk Deputy Clerk Other authorized person

### CLERK'S DETERMINATION

Based on the information in this Application, I have determined the applicant to be ( ) Indigent ( ) Not Indigent, according to s. 57.082, F.S.
Dated this _____ day of _____, 20 _____

Clerk of the Circuit Court
By _____, Deputy Clerk

**APPLICANTS FOUND NOT TO BE INDIGENT MAY SEEK REVIEW BY A JUDGE BY ASKING FOR A HEARING TIME.
THERE IS NO FEE FOR THIS REVIEW.**
Sign here if you want the judge to review the clerk's decision _____

06/23/2010

**Signature:**

**Email:** adjewett@gmail.com

# EXHIBIT 1-c

# COMPLAINT

Filing # 63336981 E-Filed 10/29/2017 08:41:57 PM

FILED

1  | Anthony D. Jewett, Ed.L.D.
   | P.O. Box 1264
2  | Fort Myers, FL 33902
   | 239-410-4735
3  | team@adjewett.com
   | PLAINTIFF IN PRO PER
4

2017 DEC -1 PM 12: 49
CLERK US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS FLORIDA

5

6                  IN THE 20TH JUDICIAL CIRCUIT COURT

7                        LEE COUNTY, FLORIDA

8  | ANTHONY D. JEWETT;                    | Case No.: [Number]

9  | JANE DOE I;                           | REQUEST FOR DAMAGES BASED ON
                                           | TORTIOUS INTEREFERENCE TO
10 | JANE DOE II;                          | PERSPECTIVE ECONOMIC ADVANTAGE
                                           | THROUGH USE OF VOICE-TO-SKULL
11 | JANE DOE III;                         | TECHNOLOGY

12 | JANE DOE IV;

13 | JANE DOE V

14 |          Plaintiff(s),

15 | -vs-

16 | UNIVERSITY OF LOUISVILLE,

17 | NATHANIEL IRVIN II;

18 | WONDALAND PRODUCTIONS, LLC;

19 | NATHANIEL IRVIN, III;

20 | EXOMEDICINE INSTITUTE

21 |          Defendant(s)

22                      DEMAND FOR JURY TRIAL

23

REQUEST FOR DAMAGES BASED ON TORTIOUS INTEREFERENCE TO PERSPECTIVE
ECONOMIC ADVANTAGE THROUGH USE OF VOICE-TO-SKULL TECHNOLOGY - 1

1

2

3

4

5

6

7

8 **COMPLAINT**

9 Plaintiffs, ANTHONY D. JEWETT, JANE DOE, JANE DOE II, JANE DOE III, JANE DOE

10 IV, JANE DOE V, hereby sue defendants UNIVERSITY OF LOUISVILLE; WONDALAND

11 PRODUCTIONS, LLC; and the EXOMEDICINE INSTITUTE, an affiliated entity of the

12 Kentucky Science and Technology Corporation.

13    1) This is an action for damages that exceed $15,000 involving parties who reside in Lee

14       County, Florida.

15    2) Plaintiff, ANTHONY D. JEWETT, is an entrepreneur and educator who manages an

16       investment fund based in Lee County, Florida.

17    3) Plaintiffs, JANE DOE I, JANE DOE II, JANE DOE III, JANE DOE IV, JANE DOE V,

18       are family members of ANTHONY D. JEWETT are stockholders in Kindly Corporation,

19       a Florida limited liability company, who also reside in Lee County, Florida.

20    4) Defendant, UNIVERSITY OF LOUISVILLE, is a large, public research institution in

21       Louisville, Kentucky partnering with Kentucky's statewide Bucks for Brains Initiative,

22       an R&D commercialization program funding novel, cross-disciplinary scientific inquiry

23

REQUEST FOR DAMAGES BASED ON TORTIOUS INTEREFERENCE TO PERSPECTIVE
ECONOMIC ADVANTAGE THROUGH USE OF VOICE-TO-SKULL TECHNOLOGY - 2

1    by researchers and faculty supported by the Kentucky State legislature and U.S. federal

2    government. Kentucky citizens have noted Brains for Bucks for its level of secrecy.

3    5) Defendant, the EXOMEDICINE INSTITUTE of the Kentucky Science and Technology

4        Corporation, is a private, collaborative R&D enterprise focused on the promotion,

5        facilitation and execution of medical research in the microgravity environment of space

6        for applications on Earth. The EXOMEDICINE INSTITUTE has an implementation

7        partner, Space Tango, that collaboratively seeks to harness the unique environment of

8        microgravity leading to exponential improvements of life on Earth based on development

9        and execution of experiments on the International Space Station (ISS). The

10       EXOMEDICINE INSTITUTE is a member of the Space Kentucky

11       Consortium, a research initiative with UNIVERSITY OF LOUISVILLE,

12       Bucks for Brains and several other university and scientific partners.

13   6) Defendant, NATHANIEL IRVIN II is a futurist professor, the William M. Strickler

14       Executive-in-Residence at the UNIVERSITY OF LOUISVILLE's College of

15       Management, an affiliated and financially supported faculty member of the

16       UNIVERSITY OF LOUISVILLE'S Brains for Bucks Initiative, and Advisory Board

17       Member of the EXOMEDICINE INSTITUTE. NATHANIEL IRVIN II is also previously

18       a well-known mentor and collaborator to Plaintiff, ANTHONY D. JEWETT.

19   7) Defendant, WONDALAND PRODUCTIONS, LLC, is a "music and video production"

20       company founded in 2004 operating at 535 Stonebriar Way SW Atlanta, GA 30331. The

21       company possesses sound recording and audiovisual equipment as well as

22       neurotechnologies including voice-to-skull (V2K), artificial telepathy, online social

23

24   REQUEST FOR DAMAGES BASED ON TORTIOUS INTEREFERENCE TO PERSPECTIVE
     ECONOMIC ADVANTAGE THROUGH USE OF VOICE-TO-SKULL TECHNOLOGY - 3

1    networking, and other capabilities gained in part through affiliation with UNIVERSITY

2    OF LOUISVILLE and the EXOMEDICINE INSTITUTE which provide the ability to

3    broadcast audio and visual stimuli through electromagnetic and sonic waves to the human

4    body via the internet and space-based satellites. It's Founder and Co-CEO is Defendant,

5    NATHANIEL IRVIN III, son of Defendant, NATHANIEL IRVIN II. WONDALAND

6    PRODUCTIONS, LLC is an affiliated entity of Wondaland Records, an imprint of Sony

7    Music.

8                              **STATEMENT OF FACTS**

9    1) Plaintiff, ANTHONY D. JEWETT, had a longstanding relationship with Defendants,

10       NATHANIEL IRVIN II, NATHANIEL IRVIN III, and Wondaland Records, given that:

11           I.    ANTHONY D. JEWETT concurrently attended Morehouse College with

12                 NATHANIEL IRVIN III and several other partners, members and staff of

13                 Wondaland Records leading NATHANIEL IRVIN III and other Defendants of

14                 Wondaland Records to collude to injure and cause harm to ANTHONY D.

15                 JEWETT and other Plaintiffs.

16           II.   NATHANIEL IRVIN II was his professional mentor in many endeavors,

17                 including the founding of a school management organization known as Thrival

18                 World Academies in Oakland, California. Thrival World Academies' school

19                 model was based in part on the academic work of NATHANIEL IRVIN II in the

20                 fields of marketing and management as well as ANTHONY D. JEWETT's work

21                 in study abroad access for minority students attending high needs public schools

22                 across the United States.

23

    REQUEST FOR DAMAGES BASED ON TORTIOUS INTEREFERENCE TO PERSPECTIVE
24  ECONOMIC ADVANTAGE THROUGH USE OF VOICE-TO-SKULL TECHNOLOGY - 4

2) Over a period of at least 18 months beginning in April 2016, Defendants NATHANIEL IRVIN II and NATHANIEL IRVIN III colluded to extensively harass, menace, sabotage and exploit Plaintiffs as a family using voice-to-skull technology.

3) Voice-to-skull technology is the transmission of voice, or any other audible or subliminal sound, directly into the head and hearing sense of a victim via sonic microwaves. Voice-to-skull use the "microwave audio effect", also known as the Frey effect, which was studied and developed by American neuroscientist, Allan H. Frey during the Cold War. At least 20 current patents exist for various devices employing this method including:

- US4858612 Hearing Device (Microwave Hearing)
- US4877027 Hearing System (Microwave Hearing via open air Broadcast)
- US5159703 Silent Subliminal Presentation System (aka Silent Sound - Microwave)

4) During the course of these malicious activities, through voice-to-skull technology, NATHANIEL IRVIN III expressed an ongoing desire to be romantically involved with Plaintiff, ANTHONY D. JEWETT's former domestic partner, Ellison X. Weeks. Both defendants were further motivated by the desire to profit from the sale of images and likenesses of Plaintiffs, including three minor children, as well as the opportunity to exploit Plaintiffs for cross-disciplinary human subjects research and testing in neurotechnology, bioengineering, management sciences and sociology through the Bucks for Brains Initiative.

5) The exploitation and menacing by Defendants of Plaintiffs very deliberately encouraged malicious actions by the affiliated family members, students and colleagues of NATHANIEL IRVIN II and NATHANIEL IRVIN III and brought to bear the resources

REQUEST FOR DAMAGES BASED ON TORTIOUS INTEREFERENCE TO PERSPECTIVE ECONOMIC ADVANTAGE THROUGH USE OF VOICE-TO-SKULL TECHNOLOGY - 5

1    of UNIVERSITY OF LOUISVILLE and the EXOMEDICINE INSTITUTE of the

2    Kentucky Science and Technology Corporation with knowledge of some officials at these

3    institution to benefit the Defendants shared interests in Wondaland Records;  the Thrivals

4    conference of the Kentucky IdeaFestival offered annually in partnership between

5    UNIVERSITY OF LOUISVILLE, WONDALAND PRODUCTIONS, LLC and the

6    EXOMEDICINE INSTITUTE of the Kentucky Science and Technology Corporation; as

7    well as the Thrivals program on monarch mind-control programming at UNIVERSITY

8    OF LOUISVILLE's Colleges of Management and Psychology and Brain Sciences.

9    6)  Plaintiff, ANTHONY D. JEWETT, was in the course of at least three financially

10   lucrative and socially-impactful business ventures during the course of this malicious

11   conduct by Defendants which would have benefited Plaintiffs in excess of $50,000,000

12   over the course of their lifetimes. These ventures included Kindly Corporation and the

13   Lee County Impact for Equity Fund, LP, a local community development venture capital

14   fund committed to economic development in the Dunbar community of Fort Myers,

15   Florida.

16   7)  All Plaintiff's herein known as JANEs DOE are the female relatives of Plaintiff,

17   ANTHONY D. JEWETT, who are stockholders in Kindly Corporation, LLC and

18   beneficiaries of general partnership interest in the Lee County Impact for Equity Fund,

19   L.P. All were adversely impacted by Defendants' intentional menacing (or allowance of

20   menacing) of their family on a consistent basis over the period of at least eighteen months

21   causing deep emotional trauma, mental distress and economic hardship to each of these.

22   Defendants collectively sought to interfere with all Plaintiff's abilities to live their lives

23   REQUEST FOR DAMAGES BASED ON TORTIOUS INTEREFERENCE TO PERSPECTIVE
     ECONOMIC ADVANTAGE THROUGH USE OF VOICE-TO-SKULL TECHNOLOGY - 6

24

1  peacefully or to determine their own well-being by disrupting their livelihood and

2  requiring Plaintiff's to care for ANTHONY D. JEWETT during the course of defendants'

3  menacing activity and exploitation of their family, including three minor children.

4
5  8) Further, Defendants knowingly and intentionally thwarted, damaged and prevented key
   advances in educational opportunity for African American students in the United States
6  by use of voice-to-skull including:
7
8      I.   A ten-year, $10 million annual allocation of study abroad scholarships from a
9           leading private university network to benefit historically Black and tribal college
10          students;
11     II.   A program on teacher preparation for African American male teachers at
12          Morehouse College; and
13
14     III.  A Center for Social Innovation to strengthen career opportunities for HBCU
15          students in the fields of impact investing, nonprofit direct service, social impact
16          consulting and philanthropy.
17                              **CAUSES OF ACTION**
18  **Tortious Interference with Prospective Economic Advantage**
19  9) Through the use of voice-to-skull and other technologies as well as other forms of
20  collusion and interference, Defendants collectively, led by NATHANIEL IRVIN II and
21  NATHANIEL IRVIN III, caused Plaintiff, ANTHONY D. JEWETT, grave injury,
22  emotional and mental distress, financial loss and reputational injury by sabotaging his
23  ability to effectively lead amongst his colleagues and causing his removal from his

REQUEST FOR DAMAGES BASED ON TORTIOUS INTEREFERENCE TO PERSPECTIVE
ECONOMIC ADVANTAGE THROUGH USE OF VOICE-TO-SKULL TECHNOLOGY - 7

1   positions as Co-Founder and Co-Chairman of the Board of Directors of Thrival World

2   Academies. Defendants further caused Plaintiff, ANTHONY D. JEWETT, to lose his

3   position as Director at FSG, a social impact strategy consulting firm with offices in San

4   Francisco, California (where he earned approximately $145,000 annually) and permanent

5   damage to his relationships with members of the organization as well as the loss of his

6   chairmanship of the SVX.US (Social Venture Exchange) impact investing marketplace, a

7   partnership between the MaRS Discovery District and the State of California.

8   10) Defendants further intentionally and or knowingly inflicted or allowed the infliction of

9   injury by the use of voice-to-skull technology on Plaintiff, ANTHONY D. JEWETT's

10   ongoing relationships with other beneficial social and professional networks.

11   11) By use of voice-to-skull technology and the internet, Defendants undertook or

12   participated in the intrusion of Plaintiffs' computers, mobile phones and other electronic

13   devices such that Defendants had full knowledge of Plaintiff's lives, the existence of

14   business dealings and profitable relationships. Defendants' intentionally used,

15   encouraged use of or allowed (by persons in their employ) the use of technologies and

16   behavior that consistently sabotaged, thwarted and disrupted key events and relationships

17   that would otherwise have led to a substantial economic and financial benefit of the

18   Plaintiffs, specifically proceeds from the success of if the Lee County Impact for Equity

19   Fund as well as the growth and sale of Kindly Corporation, LLC. Plaintiffs have been

20   damaged by the loss of actual and prospective income, assets, injury to personal health,

21   mental and emotional distress, reputation, and relationships due to the Defendants'

22

23

REQUEST FOR DAMAGES BASED ON TORTIOUS INTEREFERENCE TO PERSPECTIVE
ECONOMIC ADVANTAGE THROUGH USE OF VOICE-TO-SKULL TECHNOLOGY - 8

24

1    collusion, intentional sabotage of their economic interests, and harmful exploitation of

2    their family.

3    12) All Plaintiff's herein known as JANE(s) DOE were deeply exploited by WONDALAND

4    PRODUCTIONS, LLC and NATHANIEL IRVIN III through the intentional and

5    malicious broadcast of their images using the internet and satellite capabilities of the

6    UNIVERSITY OF LOUISVILLE (as a member of the Space Kentucky consortium) to

7    other unknown perpetrators for personal diversion rather than any legitimate, authorized

8    interest or purpose. Each of these would also have benefited greatly in the form of

9    income and the full extent of their financial interests in Kindly Corporation, LLC as well

10    as the benefits of gifts, support and inheritances based on the work of ANTHONY D.

11    JEWETT but for the extensively malicious, exploitative and intrusive actions to their

12    familial and business interests by the Defendants.

13    13) Specifically, Plaintiff JANE DOE suffered great damage to her personal health,

14    emotional and mental well-being as a result of the distress caused by WONDALAND

15    PRODUCTIONS et al as well as injury to her business interests in her company CDA

16    Direct Care, a behavioral health agency contracting with the State of Florida's

17    MedWaiver services program to deliver local, supported living services to persons with

18    developmental disabilities and their families. Plaintiff, JANE DOE, would have been on

19    track to generate nearly $2,000,000 in annual revenues and to provide jobs for many local

20    women and their young but for the malicious actions of WONDALAND

21    PRODUCTIONS et al. Further, Plaintiff, JANE DOE IV, as a minor child, has

22    individually, with full knowledge of Defendants at WONDALAND PRODUCTIONS,

23

24    REQUEST FOR DAMAGES BASED ON TORTIOUS INTEREFERENCE TO PERSPECTIVE
ECONOMIC ADVANTAGE THROUGH USE OF VOICE-TO-SKULL TECHNOLOGY - 9

1    LLC, suffered great injury by the loss of her legitimate expected inheritance of 5.0%

2    interest in Kindly Corporation.

3    **Undue Invasion of Privacy**

4    14) The State of Florida Constitution guarantees the right of privacy to every natural person.

5    However, Plaintiffs collectively and individually have suffered grave, undue invasion of

6    privacy and unauthorized use by Defendants, led by NATHANIEL IRVIN III, of their

7    images and likenesses over satellite footage, video production and online gaming social

8    networks.

9

10   **REQUEST FOR RELIEF**

     WHEREFORE Plaintiffs requests damages from the Defendants and judgement

11   for damages, if necessary, by the Court in the amount of $52,000,000 USD for re-numeration of

12   loss of income, assets, pain, suffering, and other benefits unfairly accrued to the Defendants by

13   virtue of their actions toward the Plaintiffs commercial interests.

14

15   Dated this 24 of OCTOBER, 2017.

16

17   _____

     [Attorney Name]

18

19

20

21

22

23   REQUEST FOR DAMAGES BASED ON TORTIOUS INTEREFERENCE TO PERSPECTIVE
     ECONOMIC ADVANTAGE THROUGH USE OF VOICE-TO-SKULL TECHNOLOGY - 10

24

# EXHIBIT 1-d

# EXHIBITS TO THE COMPLAINT

# United States Patent [19]

## Brunkan

[11] Patent Number: 4,877,027

[45] Date of Patent: Oct. 31, 1989

[54] HEARING SYSTEM

[76] Inventor: Wayne B. Brunkan, P.O. Box 2411, Goleta, Calif. 93118

[21] Appl. No.: 202,679

[22] Filed: Jun. 6, 1988

[51] Int. Cl.⁴ .................................................. A61N 5/00
[52] U.S. Cl. ................................................... 128/420.5
[58] Field of Search ................ 128/420.5, 804, 419 R, 128/421, 422, 746; 381/68

[56] References Cited

U.S. PATENT DOCUMENTS

3,629,521 12/1971 Puharich et al. ................. 128/402.5
3,766,331 10/1973 Zink .................................. 128/420.5

OTHER PUBLICATIONS

Cain et al, "Mammalian Auditory Responses . . . ", IEEE Trans Biomed Eng, pp. 288–293, 1978.
Frey et al, "Human Perception . . . Energy" Science, 181,356–358, 1973.

Jaski, "Radio Waves & Life", Radio–Electronics, pp. 45–45, Sep. 1960.
*Microwave Auditory Effects and Applications*, Lin, 1978, pp. 176–177.

*Primary Examiner*—Lee S. Cohen
*Attorney, Agent, or Firm*—Harry W. Brelsford

[57] ABSTRACT

Sound is induced in the head of a person by radiating the head with microwaves in the range of 100 megahertz to 10,000 megahertz that are modulated with a particular waveform. The waveform consists of frequency modulated bursts. Each burst is made up of ten to twenty uniformly spaced pulses grouped tightly together. The burst width is between 500 nanoseconds and 100 microseconds. The pulse width is in the range of 10 nanoseconds to 1 microsecond. The bursts are frequency modulated by the audio input to create the sensation of hearing in the person whose head is irradiated.

8 Claims, 1 Drawing Sheet



**U.S. Patent**     Oct. 31, 1989     **4,877,027**



*Fig. 1*

*Fig. 2*

*Fig. 3*

*Fig. 4*     *Fig. 5*

4,877,027

1

# HEARING SYSTEM

This invention relates to a hearing system for human beings in which high frequency electromagnetic energy is projected through the air to the head of a human being and the electromagnetic energy is modulated to create signals that can be discerned by the human being regardless of the hearing ability of the person.

## THE PRIOR ART

Various types of apparatus and modes of application have been proposed and tried to inject intelligible sounds into the heads of human beings. Some of these have been devised to simulate speech and other sounds in deaf persons and other systems have been used to inject intelligible signals in persons of good hearing, but bypassing the normal human hearing organs.

U.S. Pat. No. 3,629,521 issued Dec. 21, 1971 describes the use of a pair of electrodes applied to a person's head to inject speech into the head of a deaf person. An oscillator creates a carrier in the range of 18 to 36 KHz that is amplitude modulated by a microphone.

Science magazine volume 181, page 356 describes a hearing system utilizing a radio frequency carrier of 1.245 GHz delivered through the air by means of a waveguide and horn antenna. The carrier was pulsed at the rate of 50 pulses per second. The human test subject reported a buzzing sound and the intensity varied with the peak power.

Similar methods of creating "clicks" inside the human head are mentioned in I.E.E.E. Transactions of Biomedical Engineering, volume BME 25, No. 3, May 1978.

The transmission of intelligible speech by audio modulated Microwave is described in the book Microwave Auditory Effects and Applications by James C. Lin 1978 publisher Charles C. Thomas.

## BRIEF SUMMARY OF THE INVENTION

I have discovered that a pulsed signal on a radio frequency carrier of about 1,000 megahertz (1000 MHz) is effective in creating intelligible signals inside the head of a person if this electromagnetic (EM) energy is projected through the air to the head of the person. Intelligible signals are applied to the carrier by microphone or other audio source and I cause the bursts to be frequency modulated. The bursts are composed of a group of pulses. The pulses are carefully selected for peak strength and pulse width. Various objects, advantages and features of the invention will be apparent in the specification and claims.

## BRIEF DESCRIPTION OF THE DRAWINGS

In the drawings forming an integral part of this specification:

FIG. 1 is a block diagram of the system of the invention.

FIG. 2 is a diagram of an audio wave which is the input to be perceived by the recipient.

FIG. 3 is a diagram on the same time coordinate as FIG. 2 showing bursts that are frequency modulated by the wave form of FIG. 2.

FIG. 4 shows, on an enlarged time coordinate, that each vertical line depicted in FIG. 3 is a burst of pulses. (A burst is a group of pulses).

2

FIG. 5 shows, on a further enlarged time coordinate, a single continues pulse, Depicted as 'a vertical line in FIG. 4.

## DETAILED DESCRIPTION OF THE INVENTION

Inasmuch as microwaves can damage human tissue, any projected energy must be carefully regulated to stay within safe limits. The guideline for 1,000 MHz, set by the American Standards Institute, is 3.3 mw/cm2 (3.3 milliwatts per square centimeter). The apparatus described herein must be regulated to stay within this upper limit.

Referring to FIG. 1 a microphone 10 or other generator of audio frequencies, delivers its output by wire 11 to an FM capable pulse generator 12 and by branch wire 13 to a comparator 14. The comparator 14 also receives a signal from a voltage standard 16. When the peak voltage of the audio generator 10 falls below the standard 16 the comparator delivers a signal by wire 17 to the FM capable pulse generator 12 to shut down the pulse generator 12. This avoids spurious signals being generated. The output of the FM pulse generator 12 is delivered by wire 18 to a microwave generator 19 which delivers its output to the head of a human being 23. In this fashion the person 23 is radiated with microwaves that are in short bursts.

The microwave generator 19 operates at a steady frequency presently preferred at 1,000 megahertz (1,000 million). I presently prefer to pulse the microwave energy at pulse widths of 10 nanoseconds to 1 microsecond. For any one setting of the FM capable generator 12, this width is fixed. The pulses are arranged in bursts. The timing between bursts is controlled by the height of the audio envelope above the voltage standard line. In addition the bursts are spaced from one another at a non-uniform rate of 1 to 100 KHz. This non-uniform spacing of bursts is created in the FM capable generator 12.

Referring to FIG. 2 there is illustrated an audio wave 27 generated by the audio input 10 wherein the horizontal axis is time and the vertical axis is voltage. For illustrative purposes the wave 27 is shown as having a voltage peak 28 on the left part of FIG. 2 and a voltage peak 29 of the right side of FIG. 2. The voltage standard 16 of FIG. 1 generates a dc voltage designated at 31 in FIG. 2. This standard voltage is preferably at about 50% of the peak voltage 28. The comparator 14 of FIG. 1 actuates the FM capable generator 12 only when the positive envelope of the audio wave 27 exceeds the voltage standard. The negative portions of the audio wave are not utilized.

Referring now to FIG. 3 there is illustrated two groups of bursts of microwave energy that are delivered by the antenna 22 of FIG. 1 to the head of the person 23. FIG. 3 has a horizontal time axis identical to the time axis of FIG. 2 and has a vertical axis that in this case represents the power of the microwaves from generator 19. At the left part of FIG. 3 are a plurality of microwave bursts 32 that occur on the time axis from the point of intersection of the standard voltage 31 with the positive part of the audio wave 27, designated as the time point 33 to time point 34 on FIG. 2. It will be noted in FIG. 3 that the bursts 32 are non-uniform in spacing and that they are closer together at the time of maximum audio voltage 28 and are more spread out toward the time points 33 and 34. This is the frequency modulation effected by the FM pulse generator 12.

4,877,027

**3**

Referring to the right part of FIG. 3 there are a plurality of microwave bursts 36 that are fewer in number and over a shorter time period than the pulses 32. These extend on the time axis of FIG. 2 from point 37 to point 38. These bursts 36 are also frequency modulated with the closest groupings appearing opposite peak 29 of FIG. 2 and greater spacing near time points 37 and 38.

Referring now to FIG. 4 there is illustrated the fact that a single burst shown as straight lines 32 or 36 on FIG. 3 are made up of ten to twenty separate microwave pulses. The duration of the burst is between 500 nanoseconds and 100 microseconds, with an optimum of 2 microseconds. The duration of each pulse within the burst is 10 nanoseconds to 1 microsecond and a time duration of 100 nanoseconds is preferred. The bursts 32 of FIG. 3 are spaced non-uniformly from each other caused by the frequency modulation of 12. FIG. 4 depicts a burst. Each vertical line 40 in FIG. 4 represents a single pulse. Each pulse is represented by the envelope 41 of FIG. 5. The pulses within a burst are spaced uniformly from eachother. The spacing between pulses may vary from 5 nanoseconds to 10 microseconds.

Referring now to FIG. 3, the concentration of bursts 32 opposite the peak 28 of FIG. 2 can be expressed as a frequency of repetition. I presently prefer to adjust the FM capable generator 12 to have a maximum frequency of repetition in the range of 25 Khz to 100 Khz. I deliberately keep this range low to reduce the amount of heating caused by the microwaves. The wider spacing of the pulses 32 opposite the cutoff points 33 and 34 of FIG. 2 can also be expressed as a frequency of repitition and I presently prefer a minimum repetition rate of 1 KHz. I find that this low repetition rate, altnough in the audio range, does not disrupt the transmission of auoio intelligence to the person 23. The aim, again, is to reduce the amount of heat transmitted to the subject 23.

**OPERATION**

Referring to FIG. 1, the intelligence to be perceived by the person 23 is introduced at the audio source 10 which may be a microphone for voice, or a tape player for music, instruction, etc. This audio signal is transmitted to the FM capable generator 12 and to the comparator 14. The comparator 14 compares the positive portions of the audio wave with voltage from the voltage standard 16 and when the audio wave instantaneously exceeds the standard voltage, the FM generator is actuated by the wire 17 connecting the comparator 14 and the FM generator 12. The FM generator 12 then sends a plurality of signals to the microwave generator 19 at each peak of the audio wave above the voltage standard.

This is shown graphically in FIGS. 2-5. The audio signal 27 of FIG. 2 exceeds the standard voltage 31 at point 33 whereupon the FM generator 12 starts emitting burst signals 32 at its lowest frequency of about 1 Khz. As time progresses past point 33 the voltage above the standard increases and the FM generator 12 responds by making the burst signals closer together until at peak 28 the maximum density of burst signals 32 is achieved, for example at a frequency of 50 Khz. The time duration of each pulse 40 (FIG. 4) is also controlled by a fixed adjustment of the FM generator 12 and for example the duration may be 100 nanoseconds.

The frequency modulated burst signals are delivered by FM generator 12 to the microwave generator as interrupted dc and the microwave generator is turned on in response to each pulse 40 and its output is deliv-

**4**

ered by coaxial cable 21 to the parabolic antenna 22 to project microwaves onto the head of a person 23. These microwaves penetrate the brain enough so that the electrical activity inside of the brain produces the sensation of sound. When the parameters are adjusted for the particular individual, he perceives intelligible audio, entirely independently of his external hearing organs.

**PRESENTLY PREFERRED QUANTITIES**

As mentioned previously, I prefer rhat the standard voltage 31 of FIG. 2 be about 50% of peak audio voltage. This not only helps to reduce heating in the person 2 but also reduces spurious audio. This 50% is not vital and the useful range is 25% to 85% of peak audio.

The minimum burst repetition frequency (for example at time points 33 and 34) is preferably 1 KHz and the maximum repetition frequency is in the range of 25 KHz to 100 KHz, with the lower frequencies resulting in less heating.

The time duration of each individual pulse of microwave radiation is in the range of 10 nanoseconds to 1 microsecond as indicated in FIG. 5, with the shorter time periods resulting in less heating.

**CONTROL OF POWER OUTPUT**

As stated above, I maintain the power output of the parabolic antenna 22 within the present safe standard of 3.3 mw/cm2 (3.3 milliwatts per square centimeter). I control the power output by controlling the strengtn of the audio modulation. This results in a duty cycle of 0.005, the decimal measure of the time in any second that the transmitter is on full power. The peak power level can be between 500 mw and 5 w and at 0.005 duty cycle these peaks will result in an average power of 2.5 mw and 25 mw respectively. However, these values are further reduced by adjusting the audio modulation so that zero input produces a zero output. Since a voice signal, for example, is at maximum amplitude only a small fraction of the rime, the average power will be below the 3.3 mw/cm2 standard, even with 5 watts peak power.

**THEORY OF OPERATION**

I have not been able to experiment to determine how my microwave system works, but from my interpretation of prior work done in this field I believe that the process is as follows. Any group of bursts related to the audio ek 28 of FIG. 2 causes an increasing ultrasonic build up within the head of a human being starting with a low level for the first bursts pulses and building up to a high level with the last bursts pulses of a group. This buildup, I believe, causes the direct discharge of random brain neurons. These discharges at audio frequency create a perception of sound. This process, I believe, bypasses the normal hearing organs and can create sound in a person who is nerve-dead deaf. However, this theory of operation is only my guess and may prove to be in error in the future.

**APPARATUS**

The apparatus of FIG. 1 for carrying out my invention may include as a microwave generator Model PH40K of Applied Microwave Laboratories and described as Signal Source. The cable 21 connecting the microwave generator 19 and the antenna is RG8 coaxial cable by Belden Industries. The antenna 22 may be a standard parabolic antenna. The FM generator 12 has to be specially built to include the spacing runction which

4,877,027

5

is obtained by a frequency generator built into a standard FM generator.

I have described my invention with respect to a presently preferred embodiment as required by the patent statutes. It will be apparent to those skilled in the technology that many variations, modification and additions can be made. All such variations, modifications and additions that come within the true spirit and scope of the invention are included in the claims.

I claim:

1. Apparatus for creating human hearing comprising:
(a) an audio source for creating electrical audio waves having positive peaks;
(b) a frequency modulator generator connected to the audio source to create frequency modulated bursts;
(c) a source of constant voltage to create a voltage standard that is in the range of 25% to 85% of the peak voltage of the audio waves;
(d) a comparator connected to the voltage source and the audio source to compare the instantaneous voltage of the waves from the audio source with the voltage standard;
(e) a connection of the comparator to the frequency modulator generator to activate the frequency modulator generator when the instantaneous voltage of the audio wave exceeds the standard voltage;
(f) a microwave generator creating microwaves in the range of 100 megahertz to 10,000 megahertz and connected to the frequency modulator generator, generating microwaves only when pulsed by the frequency modulator generator; and
(g) an antenna connected to the microwave generator to radiate the head of a human being to produce the sounds of the audio source.

2. Apparatus as set forth in claim 1 wherein the frequency generating range of the frequency modulator generator is 1 Khz to 100 KHz for bursts and 100 KHz to 20 MHZ for pulses within a burst.

3. Apparatus as set forth in claim 1 wherein the frequency generating range of the frequency modulator generator is one Khz to 100 KHz for bursts and 100

6

KHz to 20 MHZ for pulses within a burst and the duration of each pulse of the frequency modulator generator is in the range of 10 nanoseconds to 1 microsecond.

4. Apparatus as set forth in claim 1 wherein the voltage standard is approximately 50% of the peak of the audio waves.

5. Apparatus as set forth in claim 1 wherein the antenna is of the type that projects the microwaves in space to the head of a person.

6. Apparatus for creating human hearing comprising:
(a) an oscillator creating an electromagnetic carrier wave at a selected frequency in the range of 100 Mhz to 10,000 Mhz;
(b) a pulse generator connected to said oscillator to pulse the carrier with pulses having a width in the range of 10 nanoseconds to 1 microsecond with a minimum spacing between pulses of about 25 nanoseconds;
(c) a frequency modulator connected to the pulse generator;
(d) an audio signal generator connected to the modulator which modulates the pulses in accordance with the audio signal; and
(e) a transmitting antenna connected to the oscillator to transmit the carrier wave as thus modified to project the electromagnetic energy through space to the head of a person.

7. Apparatus as set forth in claim 6 wherein the modulator is a frequency modulator to vary the density of bursts within an audio envelope as a function of the audio amplitude.

8. The method of irradiating a person's head to produce sound in the head of the person comprising
(a) irridiating the head of a person with microwaves in the range of 100 Mhz to 10,000 Mhz;
(b) pulsing said microwaves with pulses in the range of 10 nanoseconds to 1 microsecond; and
(c) frequency modulating groups of pulses called bursts by audio waves wherein the modulation extends from 1 Khz to 100 Khz.

* * * * *

EXHIBIT 1-e

STANDING ORDER IN CIVIL CASES

IN THE CIRCUIT COURT FOR THE TWENTIETH JUDICIAL CIRCUIT IN AND FOR
LEE COUNTY, FLORIDA                                                    CIVIL ACTION

CASE NO: 17-CA-003489

Doe, John, aka Anthony D. Jewett, Ed.L.D. et al
   Plaintiff
vs
Wondaland Productions, LLC et al
   Defendant
_____/

## STANDING ORDER IN CIVIL CASES IN THE TWENTIETH JUDICIAL CIRCUIT

PURSUANT to Florida Rule of Civil Procedure 1.200(a), Florida Rule of Judicial Administration 2.545, and Administrative Order 1.13 entered by the Chief Judge of this Circuit, the parties are ordered to adhere to the following information and procedures applicable to civil lawsuits:

1. **SERVICE OF THIS ORDER.** The Plaintiff is directed to serve a copy of this order with each Summons issued in this case. One copy of this Order is to be filed with the Clerk of the Circuit Court with proof of service. The Plaintiff shall pay the appropriate statutory clerk's fees on copies for each Standing Order issued and attached to the Summons.

2. **CIVIL CASE MANAGEMENT SYSTEM.** The Supreme Court of Florida has established guidelines for the prompt processing and resolution of civil cases. This Court has adopted a case management system to help meet those guidelines. In contested cases (other than foreclosures, involuntary commitment of sexually violent predators and eminent domain cases), the parties are required to participate in the case management system. The case management system requires early consultation and cooperation among the parties for the preparation and submission of an Agreed Case Management Plan, early interaction with a Civil Case Manager and early involvement by the Court. The Agreed Case Management Plan requires the parties to identify a case track, confer in a good faith attempt to narrow the matters in controversy, identify the issues that require direct involvement by the Court, and establish a schedule for addressing those issues.[1] The Agreed Case Management Plan may be accessed at the Court's website at: [http://www.ca.cjis20.org/web/main/civil.asp].

Unless all of the Defendants have been served and have defaulted, an Agreed Case Management Plan will be submitted to the Civil Case Manager, at the Lee County Justice Center, 1700 Monroe Street, Fort Myers, FL 33901, on or before 150 days from the date of filing of the initial complaint. If the parties are unable to agree on an Agreed Case Management Plan, a case management conference will be scheduled by the Court. If a case management conference is scheduled, attendance by trial counsel and those parties who are not represented by counsel is mandatory.

---

[1] Case Track options include Expedited, Standard or Complex. Case Tracks have been established in order to comply with the case disposition standards set forth in Florida Rule of Judicial Administration 2.250(a)(1)(B).

3. **ALTERNATIVE DISPUTE RESOLUTION (ADR).** ADR provides parties with an out-of-court alternative to settling disagreements. The Court requires the parties to participate in ADR prior to trial. Mediation is mandatory unless the parties agree to another form of ADR. Mediation is a conference at which an independent third party attempts to arrange a settlement between the parties.

4. **RULES OF PROFESSIONALISM.** The Twentieth Judicial Circuit has adopted Administrative Order 2.20, which sets forth standards of professional courtesy and conduct for all counsel or pro-se litigants practicing within the Circuit. The Court requires that all familiarize themselves and comply with Administrative Order 2.20. Administrative Order 2.20 may be viewed on the Court's website at: http://www.ca.cjis20.org/web/main/ao_admin.asp

5. **CONTACT INFORMATION.** Attorneys and pro se parties are required to keep the court apprised of their current address, telephone numbers and email address. This information is also required to be included in all pleadings filed in your case.

DONE AND ORDERED in Chambers at Fort Myers, Lee County, Florida.

*Alane C. Laboda (electronically signed)*
**Administrative Circuit Judge**

**\*\*\*\*\*Original on file in the office of the Circuit Court Administrative Judge, Lee County**

EXHIBIT 1-f

SUMMONS TO NATHANIEL IRVIN III

Filing # 63839183 E-Filed 11/06/2017 08:36:01 PM

IN THE CIRCUIT/COUNTY COURT OF THE TWENTIETH JUDICIAL CIRCUIT IN AND FOR LEE
COUNTY, FLORIDA                                                    CIVIL ACITON

Anthony D. Jewett et al

Plaintiff(s)
vs                                          Case No:    **17-CA-003489**
Nathaniel Irivin III

Defendant(s)

### SUMMONS: PERSONAL SERVICE ON NATURAL PERSON

THE STATE OF FLORIDA:

To each Sheriff of the State:

YOU ARE COMMANDED to serve this summons and a copy of the complaint or petition in this action
on defendant: **Nathaniel Irvin III, Executive Producer, Wondaland Productions, LLC**

### IMPORTANT

A lawsuit has been filed against you.  You have **20 calendar days** after this summons is served
on you to file a written response to the attached complaint/petition with the clerk of this court,
located at: 2075 Dr. Martin Luther King Jr. Blvd., Fort Myers, FL 33901 or mail to P.O. Box
310, Fort Myers, FL 33902. A phone call will not protect you.  Your written response, including
the case number given above and the names of the parties, must be **filed** if you want the court to
hear your side of the case. **If you do not file your written response on time, you may lose the
case, and your wages, money, and property may thereafter be taken without further
warning from the court.** There are other legal requirements.  You may want to call an attorney
right away.  If you do not know an attorney, you may call an attorney referral service or a legal
aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response
to the court, you must also mail or take a copy of your written response on the party serving this
summons to the plaintiff or plaintiff's attorney named below.

Dated on:    **11/15/2017**

Linda Doggett, Clerk of the Court

By:
As Deputy Clerk

Anthony D. Jewett

Plaintiff/Plaintiff's Attorney
Address:  **P.O. Box 1264**
          **Fort Myers, Florida 33902**
Email:    **adjewett@gmail.com**
Fla. Bar No.

Fla.R.Civ.P. Form 1.902(b) Rev. 1/07

IN THE CIRCUIT/COUNTY COURT OF THE TWENTIETH JUDICIAL CIRCUIT IN AND FOR LEE
COUNTY, FLORIDA                                                      CIVIL ACITON

## IMPORTANTE

Usted ha sido demandado legalmente.  Tiene (20) dias, contados a partir del recibo de esta
notificacion, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal.
Localizado en: 2075 Dr. Martin Luther King Jr. Blvd., Fort Myers, FL 33901 or mail to P.O. Box
310, Fort Myers, FL 33902. Una llamada telefonica no lo protegera.  Si usted desea que el
tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el numero del
caso y los nombres de las partes interesadas.  Si usted no contesta la demanda a tiempo, pudiese
perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos,
sin previo aviso del tribunal.  Existen otros requisitos legales.  Si lo desea, puede usted consultar
a un abogado inmediatamente.  Si no conoce a un abogado, puede llamar a una de las oficinas de
asistencia legal que aparecen en la guia telefonica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presente su respuesta
ante el tribunal, debera usted  enviar por correo o entregar una copia de su respuesta a la persona
denominada abajo como "plaintiff or plaintiff's attorney" (demando o abogado del demandante).

**Copias de todos los documentos judiciales de este caso, incluyendo las ordenes, estan
disponibles en la oficina del Secretario de Juzgado del Circuito [Clerk of the Circuit
Court's office].  Estos documentos pueden ser revisados a su solicitud.**

**Usted debe de manener informada a la oficina del Secretario de Juzgado del Circuito de su
direccion actual.  (Usted puede presentar _____ el Formulario: Ley de Familia de la
Florida 12.915, Florida Supreme Court Approved Family Law Form 12.915, Designation of
Current Mailing and E-mail Address.)  Los papelos que se presenten en el futuro en esta
demanda judicial seran env ados por correo a la direccion que este registrada en la oficina
del Secretario.**

**ADVERTENCIA: Regla 12.285 (Rule 12.285), de las Reglas de Procedimiento de Ley de
Familia de la Florida [Florida Family Law Rules of Procedure], requiere cierta revelacion
automatica de documentos e informacion.  El incumplimient, puede resultar en sanciones,
incluyendo la desestimacion o anulacion de los alegatos.**

## IMPORTANT

Des poursuites judiciaries ont ete entreprises contre vous. Vous avez 20 jours consecutifs a partir
de la date de l'assignation de cette citation pour deposer une reponse ecrite a la plainte ci-jointe
aupres de ce tribunal. Qui se trouve a: {L'Adresse} 2075 Dr. Martin Luther King Jr. Blvd., Fort
Myers, FL 33901 or mail to P.O. Box 310, Fort Myers, FL 33902. Un simple coup de telephone
est insuffisant pour vous proteger. Vous etes obliges de deposer votre reponse ecrite, avec
mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez
que le tribunal entende votre cause. Si vous ne deposez pas votre reponse ecrite dans le relai

Fla.R.Civ.P. Form 1.902(b) Rev. 1/07

IN THE CIRCUIT/COUNTY COURT OF THE TWENTIETH JUDICIAL CIRCUIT IN AND FOR LEE
COUNTY, FLORIDA                                                    CIVIL ACITON

requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent
etre saisis par la suite, sans aucun preavis ulterieur du tribunal.  Il y a d'autres obligations
juridiques et vous pouvez requerir les services immediats d'un avocat. Si vous ne connaissez pas
d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un bureau
d'assistance juridique (figurant a l'annuaire de telephones).

Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egalement,
en meme temps que cette formalite, faire parvenir ou expedier une copie de votre reponse ecrite
au "plaintiff/plaintiff's attorney" (plaignant ou a son avocat) nomme ci-dessous.

**Les photocopies de tous les documents tribunals de cette cause, y compris des arrets, sont
disponible au bureau du greffier. Vous pouvez revue ces documents, sur demande.**

**Il faut aviser le greffier de votre adresse actuelle. (Vous pouvez deposer Florida Supreme
Court Approved Family Law Form 12.915, Designation of Current Mailing and E-mail
Address.) Les documents de l'avenir de ce proces seront envoyer a l'adresse que vous
donnez au bureau du greffier.**

**ATTENTION: La regle 12.285 des regles de procedure du droit de la famille de la Floride
exige que l'on remette certains renseignements et certains documents a la partie adverse.
Tout refus de les fournir pourra donner lieu a des sanctions, y compris le rejet ou la
suppression d'un ou de plusieurs actes de procedure.**

Fla.R.Civ.P. Form 1.902(b) Rev. 1/07

# EXHIBIT 1-g

# SUMMONS TO EXOMEDICINE INSTITUTE

Filing # 63839183 E-Filed 11/06/2017 08:36:01 PM

IN THE CIRCUIT/COUNTY COURT OF THE TWENTIETH JUDICIAL CIRCUIT IN AND
FOR LEE COUNTY, FLORIDA                                    CIVIL ACITON

**JOHN DOE et al**
_____
Plaintiff(s)
vs                                        Case No:    **17-CA-003489**
                                                      _____
**EXOMEDICINE INSTITUTE, INC.**
_____
Defendant(s)


## SUMMONS

THE STATE OF FLORIDA:

To each Sheriff of the State:


      YOU ARE COMMANDED to serve this summons and a copy of the complaint or
petition in this action on defendant: **EXOMEDICINE INSTITUTE, INC.**
_____.


      Each defendant is required to serve written defenses to the complaint or petition on
**JOHN DOE, PLAINTIFF IN PRO PER**
_____, plaintiff's
attorney, whose address is: **P.O. BOX 1264, FORT MYERS, FLORIDA 33902**
_____,
within 20 days* after service of this summons on that defendant, exclusive of the day of service,
and to file the original of the defenses with the clerk of this court either before service on
plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be
entered against that defendant for the relief demanded in the complaint or petition.

Dated on:    **11/15/2017**
          _____          Linda Doggett, Clerk of the Court

                                        By: _____
                                        As Deputy Clerk


*Except when suit is brought pursuant to section 768.28, Florida Statutes, if the State of Florida,
one of its agencies, or one of its officials or employees sued in his or her official capacity is a
defendant, the time to be inserted as to it is 40 days. When suit is brought pursuant to section
768.28, Florida Statutes, the time to be inserted is 30 days.


Fla.R.Civ.P. Form 1.902(a) Rev. 3/07

EXHIBIT 1-h

SUMMONS TO JOVIAN ZAYNE, LLC

Filing # 63839183 E-Filed 11/06/2017 08:36:01 PM

IN THE CIRCUIT/COUNTY COURT OF THE TWENTIETH JUDICIAL CIRCUIT IN AND
FOR LEE COUNTY, FLORIDA                                        CIVIL ACITON

**JOHN DOE et al**
_____
Plaintiff(s)
vs                                          Case No:   **17-CA-003489**
**JOVIAN ZAYNE, LLC**                                  _____
_____
Defendant(s)


## SUMMONS

THE STATE OF FLORIDA:

To each Sheriff of the State:

        YOU ARE COMMANDED to serve this summons and a copy of the complaint or
petition in this action on defendant: **JOVIAN ZAYNE, LLC**
_____.

        Each defendant is required to serve written defenses to the complaint or petition on
**JOHN DOE, PLAINTIFF IN PRO PER**
_____, plaintiff's
attorney, whose address is: **P.O. BOX 1264, FORT MYERS, FLORIDA 33902**
_____,
within 20 days* after service of this summons on that defendant, exclusive of the day of service,
and to file the original of the defenses with the clerk of this court either before service on
plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be
entered against that defendant for the relief demanded in the complaint or petition.

Dated on:   **11/15/2017**                 Linda Doggett, Clerk of the Court
          _____

                                           By: _____
                                           As Deputy Clerk


*Except when suit is brought pursuant to section 768.28, Florida Statutes, if the State of Florida,
one of its agencies, or one of its officials or employees sued in his or her official capacity is a
defendant, the time to be inserted as to it is 40 days. When suit is brought pursuant to section
768.28, Florida Statutes, the time to be inserted is 30 days.


Fla.R.Civ.P. Form 1.902(a) Rev. 3/07

EXHIBIT 1-i

SUMMONS TO NATHANIEL IRVIN, II

Filing # 63839183 E-Filed 11/06/2017 08:36:01 PM

IN THE CIRCUIT/COUNTY COURT OF THE TWENTIETH JUDICIAL CIRCUIT IN AND
FOR LEE COUNTY, FLORIDA                                           CIVIL ACITON

**JOHN DOE et al**
_____
Plaintiff(s)
vs                                              Case No:   **17-CA-003489**
**UNIVERSITY OF LOUISVILLE**                             _____
_____
Defendant(s)


## SUMMONS

THE STATE OF FLORIDA:

To each Sheriff of the State:


   YOU ARE COMMANDED to serve this summons and a copy of the complaint or
petition in this action on defendant: **NATHANIEL IRVIN II**
_____ .


   Each defendant is required to serve written defenses to the complaint or petition on
**JOHN DOE, PLAINTIFF IN PRO PER**
_____ , plaintiff's
attorney, whose address is: **P.O. BOX 1264, FORT MYERS, FLORIDA 33902**
_____ ,
within 20 days* after service of this summons on that defendant, exclusive of the day of service,
and to file the original of the defenses with the clerk of this court either before service on
plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be
entered against that defendant for the relief demanded in the complaint or petition.

Dated on:   **11/15/2017**            Linda Doggett, Clerk of the Court
_____

                                      By: _____
                                      As Deputy Clerk


*Except when suit is brought pursuant to section 768.28, Florida Statutes, if the State of Florida,
one of its agencies, or one of its officials or employees sued in his or her official capacity is a
defendant, the time to be inserted as to it is 40 days. When suit is brought pursuant to section
768.28, Florida Statutes, the time to be inserted is 30 days.



Fla.R.Civ.P. Form 1.902(a) Rev. 3/07

# EXHIBIT 1-j

# SUMMONS TO NATHANIEL IRVIN, II

Filing # 63839183 E-Filed 11/06/2017 08:36:01 PM

IN THE CIRCUIT/COUNTY COURT OF THE TWENTIETH JUDICIAL CIRCUIT IN AND FOR LEE
COUNTY, FLORIDA                                                                    CIVIL ACITON

Anthony D. Jewett et al
_____
Plaintiff(s)                                              Case No:    **17-CA-003489**
vs                                                                   _____
Nathaniel Irivin II
_____
Defendant(s)

## SUMMONS: PERSONAL SERVICE ON NATURAL PERSON

THE STATE OF FLORIDA:

To each Sheriff of the State:

YOU ARE COMMANDED to serve this summons and a copy of the complaint or petition in this action
on defendant:   **Nathaniel Irvin II, Professor, University of Louisville College of Business**
_____

## IMPORTANT

A lawsuit has been filed against you.  You have **20 calendar days** after this summons is served
on you to file a written response to the attached complaint/petition with the clerk of this court,
located at: 2075 Dr. Martin Luther King Jr. Blvd., Fort Myers, FL 33901 or mail to P.O. Box
310, Fort Myers, FL 33902. A phone call will not protect you.  Your written response, including
the case number given above and the names of the parties, must be **filed** if you want the court to
hear your side of the case. **If you do not file your written response on time, you may lose the
case, and your wages, money, and property may thereafter be taken without further
warning from the court.** There are other legal requirements.  You may want to call an attorney
right away.  If you do not know an attorney, you may call an attorney referral service or a legal
aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response
to the court, you must also mail or take a copy of your written response on the party serving this
summons to the plaintiff or plaintiff's attorney named below.

Dated on:   **11/15/2017**
_____

Linda Doggett, Clerk of the Court

By: _____
As Deputy Clerk

Anthony D. Jewett
_____
Plaintiff/Plaintiff's Attorney
Address:   P.O. Box 1264
_____
           Fort Myers, Florida 33902
_____
Email:   adjewett@gmail.com
_____
Fla. Bar No. _____

Fla.R.Civ.P. Form 1.902(b) Rev. 1/07

IN THE CIRCUIT/COUNTY COURT OF THE TWENTIETH JUDICIAL CIRCUIT IN AND FOR LEE
COUNTY, FLORIDA                                                         CIVIL ACITON

## IMPORTANTE

Usted ha sido demandado legalmente.  Tiene (20) dias, contados a partir del recibo de esta
notificacion, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal.
Localizado en: 2075 Dr. Martin Luther King Jr. Blvd., Fort Myers, FL 33901 or mail to P.O. Box
310, Fort Myers, FL 33902. Una llamada telefonica no lo protegera.  Si usted desea que el
tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el numero del
caso y los nombres de las partes interesadas. Si usted no contesta la demanda a tiempo, pudiese
perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos,
sin previo aviso del tribunal.  Existen otros requisitos legales.  Si lo desea, puede usted consultar
a un abogado inmediatamente.  Si no conoce a un abogado, puede llamar a una de las oficinas de
asistencia legal que aparecen en la guia telefonica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presente su respuesta
ante el tribunal, debera usted  enviar por correo o entregar una copia de su respuesta a la persona
denominada abajo como "plaintiff or plaintiff's attorney" (demando o abogado del demandante).

**Copias de todos los documentos judiciales de este caso, incluyendo las ordenes, estan
disponibles en la oficina del Secretario de Juzgado del Circuito [Clerk of the Circuit
Court's office].  Estos documentos pueden ser revisados a su solicitud.**

**Usted debe de manener informada a la oficina del Secretario de Juzgado del Circuito de su
direccion actual.  (Usted puede presentar _____ el Formulario: Ley de Familia de la
Florida 12.915, Florida Supreme Court Approved Family Law Form 12.915, Designation of
Current Mailing and E-mail Address.) Los papelos que se presenten en el futuro en esta
demanda judicial seran env ados por correo a la direccion que este registrada en la oficina
del Secretario.**

**ADVERTENCIA: Regla 12.285 (Rule 12.285), de las Reglas de Procedimiento de Ley de
Familia de la Florida [Florida Family Law Rules of Procedure], requiere cierta revelacion
automatica de documentos e informacion.  El incumplimient, puede resultar en sanciones,
incluyendo la desestimacion o anulacion de los alegatos.**

## IMPORTANT

Des poursuites judiciaries ont ete entreprises contre vous. Vous avez 20 jours consecutifs a partir
de la date de l'assignation de cette citation pour deposer une reponse ecrite a la plainte ci-jointe
aupres de ce tribunal.  Qui se trouve a: {L'Adresse} 2075 Dr. Martin Luther King Jr. Blvd., Fort
Myers, FL 33901 or mail to P.O. Box 310, Fort Myers, FL 33902. Un simple coup de telephone
est insuffisant pour vous proteger. Vous etes obliges de deposer votre reponse ecrite, avec
mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez
que le tribunal entende votre cause. Si vous ne deposez pas votre reponse ecrite dans le relai

Fla.R.Civ.P. Form 1.902(b) Rev. 1/07

IN THE CIRCUIT/COUNTY COURT OF THE TWENTIETH JUDICIAL CIRCUIT IN AND FOR LEE
COUNTY, FLORIDA                                                                CIVIL ACITON

requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent
etre saisis par la suite, sans aucun preavis ulterieur du tribunal.  Il y a d'autres obligations
juridiques et vous pouvez requerir les services immediats d'un avocat. Si vous ne connaissez pas
d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un bureau
d'assistance juridique (figurant a l'annuaire de telephones).

      Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egalement,
en meme temps que cette formalite, faire parvenir ou expedier une copie de votre reponse ecrite
au "plaintiff/plaintiff's attorney" (plaignant ou a son avocat) nomme ci-dessous.

**Les photocopies de tous les documents tribunals de cette cause, y compris des arrets, sont
disponible au bureau du greffier. Vous pouvez revue ces documents, sur demande.**

**Il faut aviser le greffier de votre adresse actuelle. (Vous pouvez deposer Florida Supreme
Court Approved Family Law Form 12.915, Designation of Current Mailing and E-mail
Address.) Les documents de l'avenir de ce proces seront envoyer a l'adresse que vous
donnez au bureau du greffier.**

**ATTENTION: La regle 12.285 des regles de procedure du droit de la famille de la Floride
exige que l'on remette certains renseignements et certains documents a la partie adverse.
Tout refus de les fournir pourra donner lieu a des sanctions, y compris le rejet ou la
suppression d'un ou de plusieurs actes de procedure.**

Fla.R.Civ.P. Form 1.902(b) Rev. 1/07

EXHIBIT 1-k

SUMMONS TO WONDALAND

PRODUCTIONS, LLC

Filing # 63839183 E-Filed 11/06/2017 08:36:01 PM

IN THE CIRCUIT/COUNTY COURT OF THE TWENTIETH JUDICIAL CIRCUIT IN AND
FOR LEE COUNTY, FLORIDA                                    CIVIL ACITON

**JOHN DOE et al**

Plaintiff(s)
vs                                          Case No:   **17-CA-003489**
**WONDALAND PRODUCTIONS, LLC**

Defendant(s)


## SUMMONS

THE STATE OF FLORIDA:

To each Sheriff of the State:


YOU ARE COMMANDED to serve this summons and a copy of the complaint or
petition in this action on defendant: **WONDALAND PRODUCTIONS, LLC**                    .


Each defendant is required to serve written defenses to the complaint or petition on
**JOHN DOE, PLAINTIFF IN PRO PER**
                                                          , plaintiff's
attorney, whose address is: **P.O. BOX 1264, FORT MYERS, FLORIDA 33902**        .

within 20 days* after service of this summons on that defendant, exclusive of the day of service,
and to file the original of the defenses with the clerk of this court either before service on
plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be
entered against that defendant for the relief demanded in the complaint or petition.

Dated on:   **11/15/2017**              Linda Doggett, Clerk of the Court

                                        By: _____
                                        As Deputy Clerk


*Except when suit is brought pursuant to section 768.28, Florida Statutes, if the State of Florida,
one of its agencies, or one of its officials or employees sued in his or her official capacity is a
defendant, the time to be inserted as to it is 40 days. When suit is brought pursuant to section
768.28, Florida Statutes, the time to be inserted is 30 days.


Fla.R.Civ.P. Form 1.902(a) Rev. 3/07

EXHIBIT 1-l

AMENDED COMPLAINT

Filing # 63839183 E-Filed 11/06/2017 08:36:01 PM

JOHN DOE
P.O. BOX 1264
FORT MYERS, FLORIDA
PLAINTIFF IN PRO PER

IN THE 20TH JUDICIAL CIRCUIT COURT

LEE COUNTY, FLORIDA

Case No.: 17-CA-003489

JOHN DOE;

JANE DOE I;

JANE DOE II;

JANE DOE III;

JANE DOE V

      Plaintiff(s),

-vs-

UNIVERSITY OF LOUISVILLE;

NATHANIEL IRVIN II;

NATHANIEL IRVIN, III;

JOVIAN ZAYNE, LLC;

WONDALAND PRODUCTIONS, LLC;

EXOMEDICINE INSTITUTE

      Defendant(s)

REQUEST FOR DAMAGES BASED ON TORTIOUS INTEREFERENCE TO PERSPECTIVE ECONOMIC ADVANTAGE THROUGH USE OF VOICE-TO-SKULL TECHNOLOGY

DEMAND FOR JURY TRIAL

REQUEST FOR DAMAGES BASED ON TORTIOUS INTEREFERENCE TO PERSPECTIVE ECONOMIC ADVANTAGE THROUGH USE OF VOICE-TO-SKULL TECHNOLOGY - 1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
~~

**COMPLAINT**

Plaintiffs, JOHN DOE, JANE DOE, JANE DOE II, JANE DOE III, JANE DOE IV, JANE DOE V, hereby sue defendants UNIVERSITY OF LOUISVILLE; WONDALAND PRODUCTIONS, LLC; JOVIAN ZAYNE, LLC; and the EXOMEDICINE INSTITUTE, an affiliated entity of the Kentucky Science and Technology Corporation.

1) This is an action for damages that exceed $15,000 involving parties who reside in Lee County, Florida.

2) Plaintiff, JOHN DOE, is an entrepreneur and educator who manages an investment fund based in Lee County, Florida.

3) Plaintiffs, JANE DOE I, JANE DOE II, JANE DOE III, JANE DOE IV, JANE DOE V, are women family members of JOHN DOE; stockholders in Kindly Corporation, a Florida limited liability company, who reside in Lee County, Florida; and beneficiaries of general partnership of the Lee County Impact for Equity Fund, L.P.

4) Defendant, UNIVERSITY OF LOUISVILLE, is a large, public research institution in Louisville, Kentucky partnering with Kentucky's statewide Bucks for Brains Initiative, an R&D commercialization program funding cross-disciplinary, natural scientific inquiry supported by the Kentucky State legislature and U.S. federal government. Kentucky citizens have noted Bucks for Brains for its level of secrecy.

REQUEST FOR DAMAGES BASED ON TORTIOUS INTEREFERENCE TO PERSPECTIVE ECONOMIC ADVANTAGE THROUGH USE OF VOICE-TO-SKULL TECHNOLOGY - 2

5) Defendant, the EXOMEDICINE INSTITUTE of the Kentucky Science and Technology
   Corporation, is a private, collaborative R&D enterprise focused on the promotion,
   facilitation and execution of medical research in the microgravity environment of space
   for applications on Earth. The EXOMEDICINE INSTITUTE has an implementation
   partner, Space Tango, that collaboratively seeks to harness the unique environment of
   microgravity to develop and execute experiments on the International Space Station
   (ISS). The EXOMEDICINE INSTITUTE is a member of the Space Kentucky
   Consortium, a research initiative between UNIVERSITY OF LOUISVILLE,
   Bucks for Brains, University of Kentucky, Morehead State University and
   and other scientific partners.

6) Defendant, NATHANIEL IRVIN II is a futurist professor at the UNIVERSITY OF
   LOUISVILLE's College of Management, a financially supported faculty member of the
   Bucks for Brains Initiative, and a Board Director of the EXOMEDICINE INSTITUTE of
   the Kentucky Science and Technology Corporation. Defendant is also Founder of
   Thrivals day at the Kentucky IdeaFestival, an annual showcase on advances in artificial
   intelligence, neuroscience and space exploration produced in collaboration with
   WONDALAND PRODUCTIONS, LLC and the Kentucky Science and Technology
   Corporation. He is also previously a well-known mentor and collaborator to Plaintiff,
   JOHN DOE.

7) Defendant, WONDALAND PRODUCTIONS, LLC, is a "music and video production"
   company founded in 2004 operating at 535 Stonebriar Way SW Atlanta, GA 30331. The
   company possesses sound recording and audiovisual equipment as well as

REQUEST FOR DAMAGES BASED ON TORTIOUS INTEREFERENCE TO PERSPECTIVE
ECONOMIC ADVANTAGE THROUGH USE OF VOICE-TO-SKULL TECHNOLOGY - 3

1  neurotechnologies including voice-to-skull (V2K), artificial telepathy, online social

2  networking, and other capabilities gained in part through affiliation with UNIVERSITY

3  OF LOUISVILLE and the EXOMEDICINE INSTITUTE which provide the ability to

4  broadcast audio and visual stimuli through electromagnetic and sonic waves to the human

5  body via the internet and satellites. It's Founder and Co-CEO is Defendant,

6  NATHANIEL IRVIN III, son of Defendant, NATHANIEL IRVIN II. WONDALAND

7  PRODUCTIONS, LLC is an affiliated entity of Wondaland Records.

8  **STATEMENT OF FACTS**

9  1) Plaintiff, JOHN DOE, had a longstanding relationship with Defendants, NATHANIEL

10  IRVIN II, NATHANIEL IRVIN III, and Wondaland Records, given that:

11  I.  JOHN DOE concurrently attended Morehouse College with NATHANIEL IRVIN

12  III and other partners, members and staff of Wondaland Records including

13  George Peters, Charles Joseph Delbert, Jr., and Mikael Moore. Their common

14  status as Morehouse College alumni was a primary factor in collusion amongst

15  these four men to target, injure and cause harm to the personal, professional and

16  commercial interests of JOHN DOE, JANE DOE, JANE DOE II, JANE DOE III,

17  JANE DOE IV and JANE DOE V in order to profit from their economic and

18  social vulnerability.

19  II.  NATHANIEL IRVIN II was his professional mentor in many endeavors,

20  including the founding of a school management organization known as Thrival

21  World Academies in Oakland, California. Thrival World Academies' school

22  model was based in part on the academic work of NATHANIEL IRVIN II in the

23

REQUEST FOR DAMAGES BASED ON TORTIOUS INTEREFERENCE TO PERSPECTIVE
ECONOMIC ADVANTAGE THROUGH USE OF VOICE-TO-SKULL TECHNOLOGY - 4

1    fields of marketing and management as well as JOHN DOE's work in study

2    abroad access for minority students attending high needs public schools across the

3    United States.

4    2) Hon. Maxine Waters is the Representative of the 43rd Congressional district of

5    California. Rep. Waters' grandson, Mikael Moore, was formerly her Chief of Staff, is

6    currently President of Wondaland Management, LLC; and was a contemporary of

7    Plaintiff, JOHN DOE, at Morehouse College alongside other partners and staff of

8    Wondaland Records. Mr. Moore brought to bear the power of his grandmother's office to

9    orchestrate the harassment, sabotage and injury wrought against the Plaintiffs as a family

10   by the Defendants.

11   3) Defendants NATHANIEL IRVIN II, NATHANIEL IRVIN III, and WONDALAND

12   PRODUCTIONS, LLC partner, Charles Delbert Joseph, Jr. previously collaborated on a

13   musical album, *The Archandroid*, centered around a black female "humanoid" from the

14   future with war-like tendencies for their colleague, Janelle Monae Robinson. Ms.

15   Robinson is known for her performances as the "Electric Lady".

16   4) Over a period of at least 18 months beginning in April 2016, Defendants NATHANIEL

17   IRVIN II and NATHANIEL IRVIN III colluded and fostered the collusion of others

18   using resources of the Defendants to extensively harass, menace, sabotage and exploit

19   Plaintiffs as a family using voice-to-skull technology.

20   5) Voice-to-skull technology is the transmission of voice, or any other audible or subliminal

21   sound, directly into the head and hearing sense of a victim via sonic microwaves. Voice-

22   to-skull use the "microwave audio effect", also known as the Frey effect, which was

23
24   REQUEST FOR DAMAGES BASED ON TORTIOUS INTEREFERENCE TO PERSPECTIVE
     ECONOMIC ADVANTAGE THROUGH USE OF VOICE-TO-SKULL TECHNOLOGY - 5

studied and developed by American neuroscientist, Allan H. Frey during the Cold War. At least 20 current patents exist for various devices employing this method including:

- US4858612 Hearing Device (Microwave Hearing)
- US4877027 Hearing System (Microwave Hearing via open air Broadcast)
- US5159703 Silent Subliminal Presentation System (aka Silent Sound - Microwave)

6) During the course of these malicious activities, through voice-to-skull technology, NATHANIEL IRVIN III expressed an ongoing desire to be romantically involved with Plaintiff, JOHN DOE's former domestic partner, Ellison X. Weeks, who by account of NATHANIEL IRVIN et al, colluded to cause harm, injury and sabotage to the Plaintiffs as well. Both defendants were further motivated by the desire to profit from the sale of images and likenesses of Plaintiffs, including three minor children, as well as the opportunity to exploit Plaintiffs for cross-disciplinary human subjects research and testing in neurotechnology, bioengineering, management sciences and sociology through the Bucks for Brains Initiative.

7) Plaintiff, JOHN DOE's identity as a gay, black man was a key motivating factor in his targeting for harassment by the Defendants. Specifically, his masculinity was continually denigrated, called into question and exploited throughout the harassive activity as a means to "improve" him as a human being.

8) The continuous harassment towards the plaintiffs by the defendants facilitated further malicious actions by at least twenty-five other family members, students and colleagues of NATHANIEL IRVIN II and NATHANIEL IRVIN III. The defendants leveraged the significant financial as well as the Research and Development resources of the

REQUEST FOR DAMAGES BASED ON TORTIOUS INTEREFERENCE TO PERSPECTIVE ECONOMIC ADVANTAGE THROUGH USE OF VOICE-TO-SKULL TECHNOLOGY - 6

1      UNIVERSITY OF LOUISVILLE and the EXOMEDICINE INSTITUTE for his own

2      benefit and their shared financial interests in Wondaland Records; the

3      Thrivals@TheIdeaFestival conference of the Kentucky IdeaFestival and the

4      EXOMEDICINE INSTITUTE of the Kentucky Science and Technology Corporation; as

5      well as the Thrivals program at UNIVERSITY OF LOUISVILLE's Colleges of

6      Management and Psychology and Brain Sciences.

7  9) Plaintiff, JOHN DOE, was in the course of at least three financially lucrative and

8      socially-impactful business ventures during the course of this malicious conduct by

9      Defendants which would have benefited Plaintiffs in excess of $50,000,000 over the

10     course of their lifetimes. These ventures included Kindly Corporation and the Lee County

11     Impact for Equity Fund, LP, a local community development venture capital fund

12     committed to economic development in the Dunbar community of Fort Myers, Florida.

13

14  10) All Plaintiff's herein known as JANEs DOE are the female relatives of Plaintiff, JOHN

       DOE, who are stockholders in Kindly Corporation, LLC and beneficiaries of general

15     partnership interest in the Lee County Impact for Equity Fund, L.P. All were adversely

16     impacted by Defendants' intentional menacing (or allowance of menacing) of their

17     family on a consistent basis over the period of at least eighteen months causing deep

18     emotional trauma, mental distress and economic hardship to each of these. Defendants

19     collectively sought to interfere with all Plaintiff's abilities to live their lives peacefully or

20     to determine their own well-being by disrupting their livelihood and requiring Plaintiff's

21     to care for JOHN DOE during the course of defendants' menacing activity and

22     exploitation of their family, including three minor children.

23

    REQUEST FOR DAMAGES BASED ON TORTIOUS INTEREFERENCE TO PERSPECTIVE
ECONOMIC ADVANTAGE THROUGH USE OF VOICE-TO-SKULL TECHNOLOGY - 7

11) Further, Defendants actions towards the plaintiff knowingly and intentionally thwarted prevented and thwarted many educational opportunities for African American students in the United States by use of voice-to-skull including:

I.   A ten-year, $10 million annual allocation of study abroad scholarships from a leading private university network to benefit historically Black and tribal college students;

II.  A program on teacher preparation for African American male teachers at Morehouse College; and

III. A Center for Social Innovation to strengthen career opportunities for HBCU students in the fields of impact investing, nonprofit direct service, social impact consulting and philanthropy.

### CAUSES OF ACTION

*Tortious Interference with Prospective Economic Advantage*

12) Harassment through the use of voice-to-skull and other technologies as well as other forms of collusion and interference, Defendants collectively, led by NATHANIEL IRVIN II and NATHANIEL IRVIN III, caused Plaintiff, JOHN DOE, grave injury, emotional and mental distress, financial loss and reputational injury by sabotaging his ability to effectively lead amongst his colleagues and causing his removal from his positions as Co-Founder and Co-Chairman of the Board of Directors of Thrival World Academies. Defendants further caused Plaintiff, JOHN DOE, to lose his position as Director at FSG, a social impact strategy consulting firm with offices in San Francisco,

REQUEST FOR DAMAGES BASED ON TORTIOUS INTEREFERENCE TO PERSPECTIVE ECONOMIC ADVANTAGE THROUGH USE OF VOICE-TO-SKULL TECHNOLOGY - 8

California (where he earned approximately $145,000 annually) and permanently damaged his relationships with and members of the organization, as well as the loss of his chairmanship of the SVX.US (Social Venture Exchange) impact investing marketplace, a partnership between the MaRS Discovery District and the State of California.

13) Defendants further intentionally and or knowingly inflicted or allowed the infliction of injury by the use of voice-to-skull technology on Plaintiff, JOHN DOE's ongoing relationships with other beneficial social and professional networks.

14) By use of voice-to-skull technology and the internet, Defendants undertook or participated in the intrusion of Plaintiffs' computers, mobile phones and other electronic devices such that the Defendants had full knowledge of Plaintiff' business dealings and profitable relationships. Defendants' intentionally used, encouraged use of or allowed (by persons in their employ) the use of technologies and behavior that consistently sabotaged, thwarted and disrupted key events and relationships that would otherwise have led to a substantial economic and financial benefit of the Plaintiffs, specifically proceeds from the success of if the Lee County Impact for Equity Fund as well as the growth and sale of Kindly Corporation, LLC. Plaintiffs have been damaged by the loss of actual and prospective income, assets, injury to personal health, mental and emotional distress, reputation, and relationships due to the Defendants' collusion, intentional sabotage of their economic interests, and harmful exploitation of their family.

15) All Plaintiff's herein known as JANE(s) DOE were deeply exploited by WONDALAND PRODUCTIONS, LLC and NATHANIEL IRVIN III through the intentional and malicious broadcast of their images using the internet and satellite capabilities of the

REQUEST FOR DAMAGES BASED ON TORTIOUS INTEREFERENCE TO PERSPECTIVE ECONOMIC ADVANTAGE THROUGH USE OF VOICE-TO-SKULL TECHNOLOGY - 9

1    UNIVERSITY OF LOUISVILLE (as a member of the Space Kentucky consortium) to

2    other unknown perpetrators for personal diversion rather than any legitimate, authorized

3    interest or purpose. Each of these would also have benefited greatly in the form of

4    income and the full extent of their financial interests in Kindly Corporation, LLC as well

5    as the benefits of gifts, support and inheritances based on the work of JOHN DOE but for

6    the extensively malicious, exploitative and intrusive actions to their familial and business

7    interests by the Defendants.

8    16) Specifically, Plaintiff JANE DOE suffered great damage to her personal health,

9    emotional and mental well-being as a result of the distress inflicted on the plaintiff caused

10    by WONDALAND PRODUCTIONS LLC et al as well as injury to her business interests

11    in her company, a behavioral health agency contracting with the State of Florida's

12    MedWaiver services program to deliver local, supported living services to persons with

13    developmental disabilities and their families. Plaintiff, JANE DOE, would have been on

14    track to generate nearly $2,000,000 in annual revenues and to provide jobs for many local

15    women were it not for the malicious actions of WONDALAND PRODUCTIONS et al.

16    Further, Plaintiff, JANE DOE IV, as a minor child, has individually, with full knowledge

17    of Defendants at WONDALAND PRODUCTIONS, LLC, suffered great injury by the

18    loss of her legitimate expected inheritance of 5.0% interest in Kindly Corporation.

19    *Invasion of Privacy*

20    17) The State of Florida Constitution guarantees the right of privacy to every natural person.

21    However, Plaintiffs collectively and individually have suffered grave, undue invasion of

22    privacy, appropriation, public disclosure of private facts, and unauthorized use by

23

REQUEST FOR DAMAGES BASED ON TORTIOUS INTEREFERENCE TO PERSPECTIVE
ECONOMIC ADVANTAGE THROUGH USE OF VOICE-TO-SKULL TECHNOLOGY - 10

1  Defendants, led by NATHANIEL IRVIN III, of their images and likenesses over satellite

2  footage, video production and online gaming social networks.

3  **REQUEST FOR RELIEF**

4  Plaintiffs hereby demand that Defendants cease and desist from all harassment,

5  menacing, mayhem, exploitative and malicious activities herein referenced or otherwise,

6  including all forms of communication with all parties named herein as plaintiffs not facilitated by

7  competent legal counsel. Plaintiffs further demand damages from the Defendants and judgement

8  for damages, if deemed necessary, by the Court in the amount of $52,000,000 USD for re-

9  numeration of loss of income, assets, emotional and psychological distress, pain, suffering, and

10  other benefits unfairly accrued to the Defendants by virtue of their actions toward the Plaintiffs

11  commercial interests.

12

13  Dated this 24 of OCTOBER, 2017.

14

15

16

17  _____
    Plaintiff in Pro Se

18

19

20

21

22

23

24  REQUEST FOR DAMAGES BASED ON TORTIOUS INTEREFERENCE TO PERSPECTIVE
    ECONOMIC ADVANTAGE THROUGH USE OF VOICE-TO-SKULL TECHNOLOGY - 11

EXHIBIT 1-m

SECOND APPLICATION FOR DETERMINATION
OF INDIGENT STATUS

Filing # 63966150 E-Filed 11/08/2017 06:58:19 PM

20th
IN THE CIRCUIT/COUNTY COURT OF THE .................... JUDICIAL CIRCUIT
IN AND FOR ------LEE------ COUNTY, FLORIDA

John Doe (aka Anthony Jewett) et al

**Plaintiff/Petitioner or In the Interest Of**

CASE NO. 17-CA-00389

Wondaland Productions, LLC et al

**Defendant/Respondent**

## APPLICATION FOR DETERMINATION OF CIVIL INDIGENT STATUS

**Notice to Applicant:** If you qualify for civil indigence you must enroll in the clerk's office payment plan and pay a one-time administrative fee of $25.00  This fee shall not be charged for Dependency or Chapter 39 Termination of Parental Rights actions

1 I have __0__ dependents. *(Include only those persons you list on your U.S. Income tax return.)*
Are you Married? Yes ✓ No   Does your Spouse Work? Yes   No   Annual Spouse Income? $ Not applicable

2 I have a net income of $ __2231.41__ paid   weekly   every two weeks ✓ semi-monthly   monthly   yearly   other

*(Net income is your total income including salary, wages, bonuses, commissions, allowances, overtime, tips and similar payments, minus deductions required by law and other court-ordered payments such as child support.)*

3 I have other income paid   weekly   every two weeks   semi-monthly   monthly   yearly   other __none__
*(Circle "Yes" and fill in the amount if you have this kind of income, otherwise circle "No")*

| | | | | |
|---|---|---|---|---|
| Second Job | Yes $ _____ No | Veterans' benefits | Yes $ _____ No |
| Social Security benefits | | Workers compensation | Yes $ _____ No |
| For you | Yes $ _____ No | Income from absent family members | Yes $ _____ No |
| For child(ren) | Yes $ _____ No | Stocks/bonds | Yes $ _____ No |
| Unemployment compensation | Yes $ _____ No | Rental income | Yes $ _____ No |
| Union payments | Yes $ _____ No | Dividends or interest | Yes $ _____ No |
| Retirement/pensions | Yes $ _____ No | Other kinds of income not on the list | Yes $ _____ No |
| Trusts | Yes $ _____ No | Gifts | Yes $ _____ No |

I understand that I will be required to make payments for fees and costs to the clerk in accordance with §57.082(5), Florida Statutes as provided by law. although I may agree to pay more if I choose to do so.

4. I have other assets: *(Circle 'yes' and fill in the value of the property, otherwise circle "No")*

| | | | | |
|---|---|---|---|---|
| Cash | Yes $ 420.00 No | Savings account | Yes $ 2,351.17 No |
| Bank account(s) | Yes $ 152.40 No | Stocks/bonds | Yes $ _____ No |
| Certificates of deposit or | | Homestead Real Property* | Yes $ _____ No |
| money market accounts | Yes $ _____ No | Motor Vehicle* | Yes $ _____ No |
| Boats* | Yes $ _____ No | Non-homestead real property/real estate* | Yes $ _____ No |

*show loans on these assets in paragraph 5

Check one. I   DO ✓ DO NOT expect to receive more assets in the near future  The asset is _____

5. I have total liabilities and debts of $ ~107,341 as follows   Motor Vehicle $ _____   Home $ _____ Other Real Property $ _____, Child Support paid direct $ _____, Credit Cards $ _____ Medical Bills $ ~5,500 ___ Cost of medicines (monthly) $ _____
Other $ _____

6. I have a private lawyer in this case   Yes No

A person who knowingly provides false information to the clerk or the court in seeking a determination of indigent status under s. 57.082, F.S commits a misdemeanor of the first degree, punishable as provided in s 775.082, F.S. or s. 775.083, F.S. I attest that the information I have provided on this application is true and accurate to the best of my knowledge.

Signed this __08__ day of __November__, 20 __17__

03/03/1981   J3C0-004-81-043

Date of Birth     Driver's License or ID Number

P.O. Box 1264, Fort Myers, Florida 33902

Address, P O Address, Street, City, State, Zip Code

Signature of Applicant for Indigent Status
Print Full Legal Name
Phone Number:

**CLERK'S DETERMINATION**

Based on the information in this Application, I have determined the applicant to be ( ) Indigent ☒ Not Indigent, according to s. 57.082, F.S.

Dated this _____ day of **11/15/2017** . 20_____          Clerk of the Circuit Court by _____

This form was completed with the assistance of: _____
                                               Clerk/Deputy Clerk/Other authorized person.

**APPLICANTS FOUND NOT TO BE INDIGENT MAY SEEK REVIEW BY A JUDGE BY ASKING FOR A HEARING TIME. THERE IS NO FEE FOR THIS REVIEW**

Sign here if you want the judge to review the clerk's decision _____